******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KENNETH PORTER
(AC 35949)

Beach, Sheldon and Harper, Js.

*Argued January 4—officially released August 2, 2016*

(Appeal from Superior Court, judicial district of New Haven, Mullins, J.)

*Mark Rademacher*, assistant public defender, with whom, on the brief, was *Janice Wolf*, senior assistant public defender, for the appellant (defendant).

*Jonathan M. Sousa*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Marc Ramia*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Kenneth Porter, appeals from the judgment of conviction, rendered after a jury trial, of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1) and interfering with an officer in violation of General Statutes § 53a-167a.[1] The defendant claims that (1) his conviction of both assault of an officer and interfering with an officer violated the protection of the federal constitution against double jeopardy, and (2) the court erred in denying his request to instruct the jury that interfering with an officer is a lesser included offense of assault of an officer. We disagree.

The jury reasonably could have found the following facts. On May 24, 2010, Brian Donnelly, a patrol officer with the Yale Police Department, heard a police broadcast regarding a domestic dispute involving the defendant. Donnelly responded by proceeding to Winchester Avenue, where he spotted a vehicle matching the broadcast description of the defendant's vehicle. Donnelly followed the vehicle, which in fact belonged to the defendant. After Officer Lester Blazejowski arrived in support, Donnelly stopped in front of the defendant's vehicle at the intersection of Ashmun and Grove Streets. Donnelly and Blazejowski exited their cruisers, approached the defendant's vehicle, and ordered the defendant to put his vehicle in park and to show his hands. The defendant refused to comply and, instead, reached toward the passenger side of the vehicle and then inside his pants. Donnelly thought the defendant was attempting to retrieve a weapon. He ordered the defendant to show his hands, but, instead, the defendant again reached over to the passenger side of the vehicle and then inside his pants.

Blazejowski opened the driver's side door and attempted to remove the defendant from his vehicle, but he resisted. Donnelly also tried to remove the defendant from his vehicle, but the defendant resisted and continued to reach for the waistband of his pants and elsewhere in the vehicle. Donnelly finally was able to remove the defendant from the vehicle. While the officers were trying to handcuff the defendant, the defendant tried to kick Donnelly and attempted to stab him with a screwdriver. A struggle ensued during which the officers attempted to handcuff the defendant, who swung his hands, kicked his feet, and fought "wildly." Donnelly[2] incurred scrapes and cuts that resulted in pain and "swelling." At some point during the struggle, the defendant removed a bag of marijuana from his pants and put it in his mouth. After having been subdued with pepper spray, the defendant spit out the marijuana. Eventually, the defendant was handcuffed and formally arrested.

Following a trial to a jury, the defendant was con-

victed of two counts of assault of public safety personnel, possession of a narcotic substance, possession of a controlled substance, and interfering with an officer. The defendant was sentenced on each of the assault convictions to ten years incarceration, execution suspended after seven years; the sentences were to run consecutively. The defendant's one year sentence on count seven, interfering with an officer, and five year sentence on count five, possession of a narcotic substance, were ordered to run concurrently with each other and with the assault sentences. The defendant's total effective sentence was, thus, twenty years incarceration, execution suspended after fourteen years and five years of probation. This appeal followed.

I

The defendant claims that his conviction of assault of Donnelly (count one) and interfering with Donnelly (count seven) violated the protection of the federal constitution against double jeopardy because, as charged by the state in the long form information, interfering with an officer is a lesser included offense of assault of an officer. We agree that the *Blockburger*[3] test is satisfied as to the elements of the crimes, but disagree with the conclusion that reversal is required in the circumstances of this case.

The defendant concedes that his double jeopardy claim is unpreserved,[4] and thus he seeks review of that claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] We review the claim because the record is adequate for review and the claim of a double jeopardy violation is of constitutional magnitude. See *State* v. *Laws*, 37 Conn. App. 276, 289, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995); see also *State* v. *Barber*, 64 Conn. App. 659, 671, 781 A.2d 464 ("[i]f double jeopardy claims arising in the context of a single trial are raised for the first time on appeal, these claims are reviewable" [internal quotation marks omitted]), cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001).

"A defendant's double jeopardy claim presents a question of law, over which our review is plenary. . . . The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . . Although the Connecticut constitution does not include a double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution encompasses protection against double jeopardy. . . . Double jeopardy analysis in the context of a single trial is a two-step process. First, the

charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . Traditionally we have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger* v. *United States* [284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)]. . . . Significantly, [t]he *Blockburger* rule is not controlling when the legislative intent [permitting a defendant to be prosecuted under both statutes] is clear from the face of the statute or the legislative history." (Citations omitted; internal quotation marks omitted.) *State* v. *Bernacki*, 307 Conn. 1, 9–10, 52 A.3d 605 (2012), cert. denied, U.S. , 133 S. Ct. 1804, 185 L. Ed. 2d 81 (2013). "The defendant on appeal bears the burden of proving that the prosecutions are for the same offense in law and fact." (Internal quotation marks omitted.) *State* v. *Scott*, 270 Conn. 92, 98, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005).

In the present case, of course, the context is that two counts of the operative information raise significant double jeopardy concerns. The first count alleged, in pertinent part, that "on May 24, 2010, at or around 7:23 p.m., at or near Ashmun Street, in . . . New Haven, . . . the defendant . . . with the intent to prevent a reasonably identifiable peace officer from performing his duties, to wit: Officer Brian Donnelly, and while such peace officer was acting in the performance of his duties such person caused physical injury to such peace officer in violation of [§ 53a-167c (a) (1)]." Count seven alleged, in pertinent part, that "on May 24, 2010, at or around 7:23 p.m., at or near Ashmun Street, in . . . New Haven, . . . the defendant . . . obstructed, resisted, hindered and endangered a peace officer, to wit: Officer Brian Donnelly, while in the performance of such peace officer's duties in violation of [§ 53a-167a]." No bill of particulars was filed, and the issue was not raised or preserved in the trial court.

The state concedes that, solely on the allegations of the information, the seventh count may be considered to be included within count one and, if viewed under the *Blockburger* analysis and under the assumption that both convictions were based on the same conduct,[6] convictions on both counts violate the constitutional protection against double jeopardy. The information alleges that the two crimes occurred at the same time and place, and involve the same officer. Thus, if we decide the matter on the basis of the charging document alone, one conviction must be vacated.

There are two distinct approaches followed in our appellate cases where it is not apparent from the charging document that different conduct forms the factual basis for each count. One line, which the defendant advocates that we follow, states that we are simply to apply the *Blockburger* analysis to the crimes charged and not to examine the underlying evidence. As stated in *State* v. *Mincewicz*, 64 Conn. App. 687, 691, 781 A.2d 455, cert. denied, 258 Conn. 924, 783 A.2d 1028 (2001): "It repeatedly has been held that to determine whether two charges arose from the same act or transaction, we look to the information, as amplified by the bill of particulars, if any. *State* v. *Goldson*, 178 Conn. 422, 424, 423 A.2d 114 (1979);[7] accord *State* v. *Devino*, 195 Conn. 70, 74, 485 A.2d 1302 (1985); *State* v. *Williams*, 59 Conn. App. 603, 606–607, 757 A.2d 1191, cert. denied, 254 Conn. 946, 762 A.2d 907 (2000); *State* v. *Patrick*, 42 Conn. App. 640, 645, 681 A.2d 380 (1996); *State* v. *Coleman*, 41 Conn. App. 255, 275, 675 A.2d 887 (1996), rev'd on other grounds, 242 Conn. 523, 700 A.2d 14 (1997); *State* v. *Glover*, 40 Conn. App. 387, 391, 671 A.2d 384, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996); *State* v. *Smart*, [37 Conn. App. 360, 365, 656 A.2d 677, cert. denied, 233 Conn. 914, 659 A.2d 187 (1995)]; *State* v. *Roy*, 34 Conn. App. 751, 768, 643 A.2d 289 (1994), rev'd on other grounds, 233 Conn. 211, 658 A.2d 566 (1995); *State* v. *Nita*, 27 Conn. App. 103, 113, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992); *State* v. *Marsala*, 1 Conn. App. 647, 650, 474 A.2d 488 (1984)." (Footnote added.)

The state argues that we should follow a second line of cases, highlighted by *State* v. *Brown*, 299 Conn. 640, 652–55, 11 A.3d 663 (2011). In *Brown*, the defendant asserted for the first time on appeal that his double jeopardy rights had been violated because he had been convicted of two crimes, which, according to him, should have been merged pursuant to *Blockburger*. Id., 650. He had been convicted of both robbery in the first degree and attempted robbery in the first degree. Id. He alleged that the charges arose out of the same transaction. Id. The state argued that the charges arose from different acts, and thus the defendant could constitutionally be convicted of both. Id.

The court reviewed the evidence and determined that the overall transaction, as alleged in the information, could be separated into parts, and separate acts could have constituted separate offenses. Id., 654. Because the same acts were not necessarily the common factual predicates for multiple convictions, the defendant had not shown that he had been subjected to double jeopardy. Id. Following the *Brown* line of cases, then, an appellate court reviewing an unpreserved claim of double jeopardy must examine the evidence to determine whether the alleged transaction logically can encom-

pass separate acts, which in turn form the basis of separate convictions. Under *Golding*, it is the defendant's burden to establish a constitutional violation, and the burden cannot be sustained if the defendant is unable to prove that he was in fact convicted twice for the same acts where the *Blockburger* test is satisfied as to the elements of the two crimes.[8] See also *State* v. *Kulmac*, 230 Conn. 43, 66–70, 644 A.2d 887 (1994) (examining evidence to determine that convictions for sexual assault in first and second degree arose from separate acts or transactions); *State* v. *James E.*, 154 Conn. App. 795, 833–34, 112 A.3d 791 (2015) (examining evidence to reach conclusion that two counts of assault of elderly person in first degree arose from separate acts or transactions); *State* v. *Shenkman*, 154 Conn. App. 45, 67–68, 104 A.3d 780 (2014) (concluding, after examining evidence and bill of particulars, that attempt to commit assault of public safety personnel and interfering with officer stemmed from separate acts or transactions), cert. denied, 315 Conn. 921, 107 A.3d 959 (2015). There also is a group of cases that examines the evidence to determine whether the acts constituting the offenses were part of the same act or transaction when the information and the bill of particulars, if any, fail to provide specific dates and times for the charged acts. See, e.g., *State* v. *Miranda*, 260 Conn. 93, 121, 794 A.2d 506 (2002) (information charged defendant with two counts of assault in first degree "on diverse dates and times between October, 1992, and January 27, 1993" [internal quotation marks omitted]), cert. denied, 537 U.S. 902, 123 S.Ct. 224, 154 L. Ed. 2d 175 (2002); *State* v. *Howard F.*, 86 Conn. App. 702, 704, 862 A.2d 331 (2004) (information charged defendant with two counts of risk of injury "between July 1, 2000, and March 24, 2001"), cert. denied, 273 Conn. 924, 871 A.2d 1032 (2005).

Although it may plausibly have been argued that the Supreme Court had not explicitly addressed as a distinct issue on appeal the question of whether it was permissible to examine the evidence to determine whether multiple convictions could have been based on separate acts, *Brown* quite clearly provides the framework currently to be applied, and two very recent decisions by this court squarely address the issue. In *State* v. *Morales*, 164 Conn. App. 143, 154,    A.3d    (2016), this court held that we are to examine the evidence when determining whether a defendant was convicted of separate offenses. In *State* v. *Urbanowksi*, 163 Conn. App. 377, 394,    A.3d    (2016), this court concluded, after examining the evidence, that the defendant had not met his burden to show that two convictions, which he claimed had violated double jeopardy, arose out of the same act or transaction, and he thus failed to meet his burden of showing that the jury actually convicted him twice for the same offense. We conclude that *Brown* implicitly overruled *Mincewicz*, and that *Morales* and

*Urbanowski* are binding authority for the proposition that where the information and bill of particulars, if any, do not separate a transaction into separate parts, the reviewing court has the obligation to determine whether the multiple convictions reasonably could have been predicated on different conduct.

In the present case, there were facts in evidence that the defendant resisted when Donnelly tried to remove him from the vehicle, and that the defendant tried to kick Donnelly and to stab him with a screwdriver when Donnelly and other officers tried to handcuff him outside the vehicle. There was evidence that, during the struggle to handcuff the defendant, the defendant fought "wildly" and injured Donnelly. These acts reasonably could have formed the factual basis for the offense of assault of public safety personnel.

There was also evidence of distinct and separate acts that reasonably could have formed the basis for the offense of interfering with an officer. The state urged in closing argument that the jury find the defendant guilty of the interfering with an officer charge by virtue of his attempting to swallow the drugs. There was evidence presented at trial that during the struggle to handcuff the defendant, the defendant removed a bag of marijuana from his pants and put it in his mouth.

Accordingly, the jury reasonably could have concluded, based on the evidence, that the two crimes did not stem from the same conduct. Thus, the first prong of *Blockburger*, that the offenses must have arisen from the same act, was not satisfied. The failure to meet the first prong is fatal to the defendant's double jeopardy claim because both conditions of *Blockburger* must be met in order for the convictions to amount to double jeopardy. See *State* v. *Brown*, supra, 299 Conn. 652. Accordingly, the defendant has not met his burden of proving under the third prong of *Golding* that a constitutional violation exists.

## II

The defendant also claims that the court erred in denying his request for an instruction that interfering with an officer is a lesser included offense of assault of an officer. We disagree.

On February 21, 2013, the court charged the jury late in the day and adjourned, indicating that the jury would begin deliberations the following day. The following morning, outside the presence of the jury, the court addressed certain concerns of counsel regarding the charge. The court then asked, "Anything else before we bring in the jury?" For the first time, defense counsel raised the following issue: "[The defendant] is making the request for a specific instruction to the jury before they retire to the jury deliberation room that interfering with an officer is a lesser included offense of assault on an officer, and he's looking for that specific instruc-

tion to the jury." The state objected on the ground that the jury charge had been completed and that the acts underlying the two offenses were separate and distinct. The court denied the request, stating: "There is a way to complete the interfering without the assault on the officer, and there's facts presented in this case that could make those two separate crimes. . . . I think they're properly charged separately."

"There is no fundamental constitutional right to a jury instruction on every lesser included offense . . . rather, the right to such an instruction is purely a matter of our common law. . . . In *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), our Supreme Court determined that a lesser included offense instruction should be given when: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Citation omitted; internal quotation marks omitted.) *State* v. *Rudd*, 62 Conn. App. 702, 705–706, 773 A.2d 370 (2001).

A primary issue is whether the defendant requested an "appropriate instruction" under the first prong of *Whistnant*. "It is well settled that [a] proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18]. . . . This court favors adherence to the prescriptions of § 42-18 to further that section's purpose of making instructional requests less confusing." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 262 Conn. 453, 465, 815 A.2d 1216 (2003). Section 42-18 (a) provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . ."

"Although strict compliance with the provisions of § 42-18 is certainly the least perilous method of satisfying *Whistnant*'s first prong, failure to do so is not, by itself, fatal to the defendant's claim. We have deemed the first prong of *Whistnant* satisfied when the record indicates that the trial court knew the precise point to which the defendant wished to call attention. . . . Indeed, even partial compliance with § 42-18, accompanied by substantial additional support in the record

from either party, such as detailed colloquies with the court and opposing counsel and a postcharge exception, will also satisfy the first prong of *Whistnant*. This is true as long as the trial court is informed adequately of the factual and legal bases for the instructional request." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, supra, 262 Conn. 466.

In this case, the defendant did not file a written request to charge. In *State* v. *Joseph*, 116 Conn. App. 339, 348, 976 A.2d 772 (2009), this court addressed the issue of whether the first prong of *Whistnant* was satisfied in the absence of a written request to charge. We concluded that, under the facts of that case, the first prong was satisfied: "The record reflects an in-depth discussion of this issue between the defendant's counsel, the prosecutor and the court. . . . The record also reflects that the defendant's counsel clearly argued the legal basis of her request . . . the court summarized to the parties its understanding of the defendant's argument, the state clearly argued its opposition to the defendant's request and the court stated that it would 'take [the arguments] under consideration. . . .' Under these circumstances, it is clear that the court was made aware of the legal and factual basis of the defendant's request. . . . We note that in most situations, in order to satisfy the first prong of *Whistnant*, a party must submit the request in writing. In this case, however, we conclude that this requirement was excused because the court expressly stated that it would take 'under consideration' the arguments on this issue. See *State* v. *Herring*, [210 Conn. 78, 105 n.25, 554 A.2d 686] (first prong of *Whistnant* satisfied where court stated that oral request sufficed) [cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 1989)]. Therefore, under these circumstances, we conclude that the defendant's request satisfied the first prong of *Whistnant*." (Citation omitted; footnotes omitted.) *State* v. *Joseph*, supra, 116 Conn. App. 349–51.

The circumstances of the present case are very different from those in *Joseph*. The defendant in the present case briefly and orally requested, for the first time after the jury had received its instructions, that the jury be instructed that interfering with an officer was a lesser included offense of assault of an officer. A brief and undetailed colloquy followed. We cannot say, under the facts of this case, that the court was adequately informed of the factual or legal basis of the defendant's request. It was not at all clear precisely what was requested. It is possible that the defendant was requesting an instruction to the effect that he could not be convicted of both the first and the seventh count, and it is also possible that he wanted the jury to be instructed that, in the event that the counts concerned different transactions, a lesser included offense instruction be given as to the first count. It appears that the court and the parties had in mind the first possibility,

because the brief discussion centered on the proposition that the charges involved different conduct.

In his appellate brief, the defendant argues that the first prong of *Whistnant* was satisfied simply because he requested a lesser included offense charge. He contends that the state incorrectly argued that there was a separate factual basis for the charge of interfering with an officer, and that such a distinct basis was not enumerated in the information. The point that the defendant argues on appeal, however, was never distinctly brought to the attention of the trial court. Under these circumstances, we conclude that the precise point the defendant wished to make was never adequately or timely presented to the trial court.[9] The defendant has not satisfied the first prong of *Whistnant*, and, accordingly, the trial court properly denied his request for a lesser included offense instruction.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was also convicted on a second count of assault of public safety personnel in violation of § 53a-167c (a) (1), and one count each of possession of a narcotic substance in violation of General Statutes § 21a-279 (a), and possession of a controlled substance in violation of General Statutes § 21a-279 (c). The trial court dismissed count six, possession of a controlled substance.

[2] The defendant was also convicted on the second count, which alleged that he assaulted Blazejowski. That conviction is not at issue in this appeal.

[3] *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[4] The state argues that the defendant implicitly waived his double jeopardy claim by not raising it during trial. The state argues that silence in this context amounts to implicit waiver and, thus, *Golding* review is unavailable. In *State* v. *Chimenti*, 115 Conn. App. 207, 230, 172 A.2d 293, cert. denied, 293 Conn. 909, 978 A.2d 1111 (2009), however, we stated: "[T]here are two lines of cases involving principles of double jeopardy and the applicability and availability of *Golding* review. The first involves double jeopardy claims arising in the course of a single trial and allows for *Golding* review. See, e.g., *State* v. *Brooks*, 88 Conn. App. 204, 214–17, 868 A.2d 778, cert. denied, 273 Conn. 933, 873 A.2d 1001 (2005); *State* v. *Nixon*, 32 Conn. App. 224, 235, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995). The second line of cases involves double jeopardy claims arising out of the trial of a defendant who has a double jeopardy claim that arises from a prior proceeding and generally prevents a determination of an unpreserved claim on the merits." Although silence can render double jeopardy claims in the second type of cases unreviewable under *Golding*, in the present case, the double jeopardy claim arose in the course of a single trial and, thus, *Golding* review is available for the defendant's unpreserved claim.

[5] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.* 317 Conn. 773, 781, 120 A.3d 1185 (2015) (modifying third prong of *Golding*).

[6] The *Blockburger* test, whether each crime requires proof of an element which the other does not require, is applicable only if the multiple crimes arise out of the same act or transaction. *State* v. *Goldson*, 178 Conn. 422, 424, 423 A.2d 114 (1979).

[7] A close reading of *Goldson* and of *Brown* v. *Ohio*, 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), on which *Goldson* relied, reveals that neither case held that the underlying evidence could not be examined in

order to determine whether a defendant had been convicted twice for the same conduct. In *Brown*, in fact, the information alleged that the two crimes were committed on two separate dates, but the transactions were nonetheless identical. In *Goldson*, which involved a claim that one conviction was a lesser included offense of another and thus dual convictions constituted a violation of the prohibition against double jeopardy, the state never argued that the conduct forming the basis for the two crimes was not identical. *State* v. *Goldson*, supra, 178 Conn. 427. The cases have nonetheless been cited for the proposition that only the charging documents may be reviewed.

[8] We note that the *Brown* analysis is appropriate where the claim is unpreserved and *Golding* review is sought. The analysis may be quite different in situations in which the claimed error has been preserved.

[9] We note that we decided in part I of this opinion that the jury could have determined that the convictions on the first and seventh counts were premised on different conduct. Had the request for jury instructions on the matter been adequately presented, we may have had a more precise answer: instead of "could have determined," we perhaps would know precisely what the jury did determine.

[10] The defendant also seeks review of his claim under *State* v. *Golding*, supra, 213 Conn. 239–40. We note that the first prong of *Whistnant* supplants our general preservation analysis. *State* v. *Jefferson*, 114 Conn. App. 566, 576, 970 A.2d 797 (2009). The second prong of *Golding* is not met because his claim is not of constitutional magnitude. See *State* v. *Rudd*, supra, 62 Conn. App. 705–706 (instruction on lesser included offense matter of common law and not constitutional right).

The defendant also seeks to prevail under the plain error doctrine. "[The plain error] doctrine, codified at Practice Book § 60–5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009). The case before us does not present circumstances requiring reversal because of plain error.