KAHN, J.
**650 The sole question presented in this appeal is whether a court may look to the evidence presented at trial when determining if a defendant's conviction violated the constitutional prohibition against double jeopardy. The defendant, Kenneth Porter, appeals[1] from the judgment of the Appellate Court affirming his judgment of conviction, following a jury trial, of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1) and interfering with an officer in violation of General Statutes § 53a-167a.[2] State v. Porter , 167 Conn. App. 281, 283-84, 142 A.3d 1216 (2016). The defendant claims that the Appellate *627 Court could review only the charging documents when determining whether his conviction of both charges violated the prohibition on double jeopardy and that it improperly looked to the evidence presented at trial to make that **651 determination. The state counters that State v. Schovanec , 326 Conn. 310, 163 A.3d 581 (2017), permits the review of evidence in double jeopardy analysis for the limited purpose of deciding whether the offenses stem from the same act or transaction, and that it was proper for the Appellate Court to consider evidence in that analysis. We agree with the state that the Appellate Court properly considered the evidence presented at trial and, accordingly, affirm its judgment.
The Appellate Court set forth the following facts. "On May 24, 2010, Brian Donnelly, a patrol officer with the Yale Police Department, heard a police broadcast regarding a domestic dispute involving the defendant. Donnelly responded by proceeding to Winchester Avenue [in New Haven], where he spotted a vehicle matching the broadcast description of the defendant's vehicle. Donnelly followed the vehicle, which in fact belonged to the defendant. After Officer Lester Blazejowski arrived in support, Donnelly stopped in front of the defendant's vehicle at the intersection of Ashmun and Grove Streets. Donnelly and Blazejowski exited their cruisers, approached the defendant's vehicle, and ordered the defendant to put his vehicle in park and to show his hands. The defendant refused to comply and, instead, reached toward the passenger side of the vehicle and then inside his pants. Donnelly thought the defendant was attempting to retrieve a weapon. He ordered the defendant to show his hands, but, instead, the defendant again reached over to the passenger side of the vehicle and then inside his pants.
"Blazejowski opened the driver's side door and attempted to remove the defendant from his vehicle, but he resisted. Donnelly also tried to remove the defendant from his vehicle, but the defendant resisted and continued to reach for the waistband of his pants and elsewhere in the vehicle. Donnelly finally was able to remove the defendant from the vehicle. While the officers **652 were trying to handcuff the defendant, the defendant tried to kick Donnelly and attempted to stab him with a screwdriver. A struggle ensued during which the officers attempted to handcuff the defendant, who swung his hands, kicked his feet, and fought 'wildly.' Donnelly incurred scrapes and cuts that resulted in pain and 'swelling.' At some point during the struggle, the defendant removed a bag of marijuana from his pants and put it in his mouth. After having been subdued with pepper spray, the defendant spit out the marijuana. Eventually, the defendant was handcuffed and formally arrested." (Footnote omitted.) State v. Porter , supra, 167 Conn. App. at 284-85, 142 A.3d 1216.
Relevant to this appeal, the amended information charged the defendant in the first count with assault of public safety personnel, and provided that "the defendant ... with the intent to prevent [Donnelly] from performing his duties ... and while [Donnelly] was acting in the performance of his duties ... caused physical injury to [Donnelly] in violation of [ § 53a-167c (a) (1) ] ...." It charged the defendant in the seventh count with interfering with an officer in violation of § 53a-167a, and provided that "the defendant ... obstructed, resisted, hindered and endangered [Donnelly], while in the performance of [his] duties ...." The information alleged that both offenses occurred "on May 24, 2010, at or around 7:23 p.m., at or near Ashmun Street, in the city of New Haven ...." "No bill of particulars was filed *628 ...." State v. Porter , supra, 167 Conn. App. at 288, 142 A.3d 1216.
The Appellate Court additionally set forth the following relevant procedural history. "Following a trial to a jury, the defendant was convicted of two counts of assault of public safety personnel, [one count of] possession of a narcotic substance ... and [one count of] interfering with an officer. The defendant was sentenced on each of the assault convictions to ten years **653 incarceration, execution suspended after seven years; the sentences were to run consecutively. The defendant's one year sentence on count seven, interfering with an officer, and five year sentence on count five, possession of a narcotic substance, were ordered to run concurrently with each other and with the assault sentences. The defendant's total effective sentence was, thus, twenty years incarceration, execution suspended after fourteen years and five years of probation." State v. Porter , supra, 167 Conn. App. at 285, 142 A.3d 1216.
In his appeal to the Appellate Court, the defendant claimed a double jeopardy violation for his conviction of both assault of public safety personnel and interfering with an officer. To resolve his claim, that court surveyed Connecticut's double jeopardy jurisprudence to determine if it was permitted to review evidence presented at trial because "[t]he information allege[d] that the two crimes occurred at the same time and place" and, if confined to "the charging document alone, one conviction must [therefore] be vacated." Id., at 289, 142 A.3d 1216. Although the Appellate Court noted that several of its cases had interpreted State v. Goldson , 178 Conn. 422, 423 A.2d 114 (1979), to completely bar evidentiary review during double jeopardy analysis, it concluded that subsequent cases implicitly overruled Goldson , and, as a result, it was obligated to review the evidence in addition to the charging documents. State v. Porter , supra, 167 Conn. App. at 289, 292, 142 A.3d 1216. On the basis of the evidence presented at trial, the Appellate Court held that the jury could have concluded "that the two crimes did not stem from the same conduct." Id., at 293, 142 A.3d 1216. As a result, the defendant did not satisfy one of the requirements to establish a double jeopardy violation in the context of a single trial. Id. The Appellate Court therefore affirmed the judgment of conviction. Id., at 297, 142 A.3d 1216. This certified appeal followed.
**654 The issue in this appeal is whether the Appellate Court properly reviewed the evidence presented at trial when determining that the defendant's conviction did not violate double jeopardy.[3]
*629 The defendant maintains that Goldson proscribes consideration of the evidence in double jeopardy analysis, but the state contends that this court's decision in Schovanec permits a court to look beyond the charging documents when determining if the offenses stem from the same act or transaction. Thus, both parties offer precedent in a manner that appears to be in conflict, and the state goes so far as to suggest that we should overrule Goldson in light of Schovanec if necessary. We conclude that Goldson and Schovanec are consistent because both cases prohibit the review of evidence only with regard to the second step of a two step process for evaluating whether there has been a violation of the prohibition on double jeopardy.
We begin by setting forth the standard of review. "A defendant's double jeopardy claim presents a question of law, over which our review is plenary.... The **655 double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment.... This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial." (Citation omitted; internal quotation marks omitted.) State v. Bernacki , 307 Conn. 1, 9, 52 A.3d 605 (2012), cert. denied, 569 U.S. 918, 133 S.Ct. 1804, 185 L.Ed.2d 811 (2013).
"Double jeopardy analysis in the context of a single trial is a [two step] process," and, to succeed, the defendant must satisfy both steps. (Internal quotation marks omitted.) Id."First, the charges must arise out of the same act or transaction [step one]. Second, it must be determined whether the charged crimes are the same offense [step two]. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) Id. At step two, we "[t]raditionally ... have applied the Blockburger[4] test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[5] (Internal quotation marks omitted.) Id.
**656 *630 Our case law has been consistent and unequivocal as to whether a court may consider evidence offered at the trial in the second step of this two step process: the answer is a resounding no. See, e.g., State v. Schovanec , supra, 326 Conn. at 325-26, 163 A.3d 581. This court has consistently held that the Blockburger test conducted at step two "is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Internal quotation marks omitted.) Id., at 326, 163 A.3d 581.
With regard to the first step of the inquiry, although this court has in some instances been less than clear, our decision in Schovanec clarified any ambiguity in the law. In Schovanec , this court held that "it is not uncommon that we look to the evidence at trial and to the state's theory of the case" when assessing whether the offenses stem from the same act or transaction at step one.[6] Id., at 327, 163 A.3d 581. The case involved Frank Schovanec's **657 claim that his conviction of "identity theft, illegal use of a credit card, and the lesser included offense of larceny in the sixth degree" violated the prohibition against double jeopardy. Id., at 312, 163 A.3d 581. The charges stemmed from Schovanec's theft of a wallet and its contents, including a credit card that he subsequently used. Id., at 329, 163 A.3d 581. This court reviewed the information, the prosecutor's arguments, and the evidence presented at trial to determine that the offenses did not stem from the same act or transaction because the charges arose from different acts. Id., at 326-29, 163 A.3d 581. This court held that a jury could have found that the larceny charge stemmed from the actual theft of the wallet and that the charges of identity theft and illegal use of a credit card "arose out of the specific use of one particular credit card in the stolen wallet." Id., at 329, 163 A.3d 581. As a result, the court did not go on to step two because when "we conclude that the charges may not have occurred from the same transaction, it is unnecessary for us to proceed to step two of the analysis." Id., at 328, 163 A.3d 581.
Schovanec did not change the law but, rather, reaffirmed this court's approach to double jeopardy jurisprudence. This court first considered the issue of whether evidence could be reviewed at step one in Goldson , holding that "[w]e must refer to the language of the information against the defendant, as amplified by the bill of particulars."[7]
*631 State v. Goldson , supra, 178 Conn. at 424, 423 A.2d 114.
**658 Utilizing this approach, this court determined that the charges of possession of narcotics and transportation of narcotics "clearly relate[d] to the same act or transaction," because both occurred in the same place at the same time. Id., at 424-25, 423 A.2d 114. In reaching this conclusion, although the court relied on the information and the bill of particulars, it did not explicitly prohibit looking beyond the charging documents. Id. This court took a similar approach in State v. Devino , 195 Conn. 70, 74, 485 A.2d 1302 (1985), observing that the analysis at step one is "taken with reference to the information and bill of particulars." Thus, this court again did not explicitly limit the analysis to the charging documents.[8]
This court's post- Goldson double jeopardy cases consistently enforce the Goldson prohibition against the review of evidence at step two, but do not extend that limitation to step one. See, e.g., State v. Bletsch , 281 Conn. 5, 27-28, 912 A.2d 992 (2007). The majority of these cases do not reach the issue of whether the offenses stem from the same act or transaction-generally because the issue was not in dispute or because this court chose to dispose of the case at step two. See, e.g., State v. McCall , 187 Conn. 73, 89-90, 444 A.2d 896 (1982). Nevertheless, these cases still illustrate that evidence is barred only at step two. For example, our decision in State v. McCall , supra, at 89-90, 444 A.2d 896, is particularly instructive. In McCall , the state conceded that the offenses arose from the same act or transaction, and the court accordingly turned its focus to step two. Id., at 90, 444 A.2d 896.
**659 The court observed that, as a result, the "analysis then becomes one of deciding whether, restricting our examination to the statutes, the information and the bill of particulars ... the proof of a violation of one statute necessarily requires proof of a violation of the other." (Citations omitted; emphasis added.) Id. In other words, it is only after step one that the analysis is confined to the charging documents.
That approach-allowing review of evidence at step one but not at step two-is especially clear in the post- Goldson cases that do involve analysis under step one. In such cases, this court has routinely looked beyond the charging documents to determine whether the offenses arose from a single act or transaction. See State v. Schovanec , supra, 326 Conn. at 327, 163 A.3d 581 ("[w]hen conducting the first inquiry, however, it is not uncommon that we look to the evidence at trial and to the state's theory of the case").
For example, in State v. Snook , 210 Conn. 244, 263, 265, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S.Ct. 3258, 106 L.Ed. 2d 603 (1989), this court considered evidence in determining whether charges of sexual assault in the second degree and sexual assault in the third degree arose *632 from the same act or transaction.[9] The court reasoned that, "[a]s the facts recited [in this opinion] make clear, the state introduced evidence of a number of episodes in which the defendant engaged in sexual intercourse with the victim.... Thus, the defendant has failed to meet his initial burden of demonstrating that his conviction on the second and third degree sexual assault charges arose out of the same act." (Emphasis added.) Id., at 265, 555 A.2d 390. In other words, "in Snook , **660 we analyzed the first step using both the charging document and the evidence upon which the jury could have relied." State v. Schovanec , supra, 326 Conn. at 327-28, 163 A.3d 581.
Snook is not an anomaly. Indeed, this court has reviewed evidence at step one in other cases as well. For example, in State v. Kulmac , 230 Conn. 43, 67-69, 644 A.2d 887 (1994), the court relied on evidence in the context of the defendant's conviction on multiple counts of sexual assault to determine that "the counts [did] not arise out of the same act or transaction." Victim testimony and other evidence supported the conclusion that "[e]ach separate act of sexual assault or risk of injury constituted a separate offense." Id., at 68, 644 A.2d 887. Our decision in State v. Brown , 299 Conn. 640, 11 A.3d 663 (2011), provides another example. In that case, this court again turned to the evidence at step one. Id., at 653-54, 11 A.3d 663. Our decision in Brown involved the defendant's conviction of robbery and attempted robbery, and the court concluded that the two offenses arose from different conduct even though they occurred in close geographic and temporal proximity. Id., at 650, 653-54, 11 A.3d 663. This court relied on the facts to align the charges with separate transactions, holding that the attempted robbery occurred when the victim was in a car with the defendant, and that the completed robbery occurred after the victim escaped from the car and was killed. Id., at 653-54, 11 A.3d 663.
These cases illustrate the compatibility of evidentiary review at step one and, as State v. Miranda , 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S.Ct. 224, 154 L.Ed.2d 175 (2002), illustrates, the prohibition of such review at step two. In Miranda , this court considered expert medical testimony in its analysis of whether counts of assault in the first degree stemmed from the same act or transaction at step one. Id., at 124, 794 A.2d 506. However, when analyzing a separate double jeopardy claim by the defendant at step two, this court held **661 that, in "determining whether one violation is a lesser included offense in another violation ... we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Citation omitted; internal quotation marks omitted.) Id., at 125, 794 A.2d 506. Thus, Miranda exemplifies the consistency of the divergent treatment of evidence at each step of the two step process.[10] *633 Given this context, Schovanec represents a continuation of our double jeopardy jurisprudence. In Schovanec , we held, as we did in Goldson , that a court may look only to "the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial" at step two. State v. Schovanec , supra, 326 Conn. at 326, 163 A.3d 581 ; see State v. Goldson , supra, 178 Conn. at 424, 423 A.2d 114. We did not extend this limitation to step one, however, because Snook , Kulmac , Miranda , and Brown indicate that this court need not do so. The holding and analysis of Schovanec are consistent with those cases. Indeed, by reviewing evidence at step one, but recognizing that it was barred from doing so at step two, the court in Schovanec performs the very analysis exemplified by post- Goldson cases like Miranda .
Accordingly, Schovanec and Goldson do not conflict. In light of the admitted lack of clarity in our case law in this area, we now summarize the applicable two step process for "[d]ouble jeopardy analysis in the context **662 of a single trial .... First, the charges must arise out of the same act or transaction." (Internal quotation marks omitted.) State v. Bernacki , supra, 307 Conn. at 9, 52 A.3d 605. At step one, "it is not uncommon that we look to the evidence at trial and to the state's theory of the case"; State v. Schovanec , supra, 326 Conn. at 327, 163 A.3d 581 ; in addition to "the information against the defendant, as amplified by the bill of particulars." State v. Goldson , supra, 178 Conn. at 424, 423 A.2d 114. If it is determined that the charges arise out of the same act or transaction, then the court proceeds to step two, where " 'it must be determined whether the charged crimes are the same offense.' " State v. Bernacki , supra, at 9, 52 A.3d 605. At this second step, we "[t]raditionally ... have applied the Blockburger test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Internal quotation marks omitted.) Id. In applying the Blockburger test, "we look only to the information and bill of particulars-as opposed to the evidence presented at trial-to determine what constitutes a lesser included offense of the offense charged." (Internal quotation marks omitted.) State v. Goldson , supra, at 426, 423 A.2d 114. Because double jeopardy attaches only if both steps are satisfied; State v. Bernacki , supra, at 9, 52 A.3d 605 ; a determination that the offenses did not stem from the same act or transaction renders analysis under the second step unnecessary. State v. Schovanec , supra, at 328, 163 A.3d 581.
In the present case, the Appellate Court properly looked to the evidence presented at trial at step one of its double jeopardy analysis, and it correctly determined that the offenses arose from different acts or transactions. As the Appellate Court observed with regard to **663 the offense of assault of public safety personnel, "there were facts in evidence that ... the defendant tried to kick Donnelly and to stab him with a screwdriver when Donnelly and other officers tried to handcuff him outside the vehicle." Id., at 292, 142 A.3d 1216. Furthermore, "[t]here was evidence that, during the struggle to handcuff the defendant, the defendant fought 'wildly' *634 and injured Donnelly." Id., at 292-93, 142 A.3d 1216. Similarly, separate conduct supported the offense of interfering with an officer: "The state urged in closing argument that the jury find the defendant guilty of the interfering with an officer charge by virtue of his attempting to swallow the drugs. There was evidence presented at trial that during the struggle to handcuff the defendant, the defendant removed a bag of marijuana from his pants and put it in his mouth." Id., at 293, 142 A.3d 1216. The Appellate Court properly considered this evidence in its analysis of whether the offenses arose from the same act or transaction and correctly concluded that they did not. See id. Therefore, as the Appellate Court held, the defendant's double jeopardy claim fails.[11]
We are not persuaded by the defendant's other arguments. First, the defendant contends that Brown v. Ohio , 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), bars review of the evidence in the present case. We disagree. That case involved a double jeopardy claim stemming from Nathaniel Brown's theft of a car in East Cleveland, Ohio, which, nine days later, he was "caught driving ... in Wickliffe, Ohio." Id., at 162, 97 S.Ct. 2221. "The Wickliffe police charged [Brown] with 'joyriding,' " he pleaded guilty, and was sentenced to thirty days in jail. Id. After his release, "Brown was returned to East **664 Cleveland to face further charges," and was indicted for car theft and joyriding. Id., at 162-63, 97 S.Ct. 2221. Brown objected, claiming former jeopardy. Id., at 163, 97 S.Ct. 2221. The United States Supreme Court rejected the holding of the Ohio Court of Appeals that Brown "could be convicted of both crimes because the charges against him focused on different parts of his [nine day] joyride," cautioning that "[t]he [d]ouble [j]eopardy [c]lause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." Id., at 169, 97 S.Ct. 2221.
Brown v. Ohio , supra, 432 U.S. at 161, 97 S.Ct. 2221, is inapposite to the present case. First, the holding in that case does not speak to whether evidence may be considered when determining if the offenses stem from a single act or transaction. See id., at 168-69, 97 S.Ct. 2221 (resolving double jeopardy claim without addressing question of whether evidence may be reviewed when determining if offenses stem from same act or transaction). Second, the issue in Brown v. Ohio , supra, at 169, 97 S.Ct. 2221, focused on whether the defendant could be charged with car theft and joyriding, which constituted the same statutory offense under Blockburger , on the theory that Brown's conduct spanned several days. Unlike Brown, the defendant in the present case was not charged with multiple offenses for the same conduct under a theory of temporal severability. Indeed, in the present case, the state alleged "that the two crimes occurred at the same time and place ...." State v. Porter , supra, 167 Conn. App. at 289, 142 A.3d 1216. Thus, unlike in Brown v. Ohio , supra, at 169, 97 S.Ct. 2221, the state did not suggest that the offenses are separate because they occurred on different days but, rather, because each resulted from different conduct.[12] Id., at 290, 142 A.3d 1216.
**665 *635 We also disagree with the defendant's argument that allowing a review of the evidence at step one contravenes constitutional principles of notice and unduly complicates his legal defense. The state contends that this argument is unpreserved and subject to Golding **666 review, which it would fail because the defendant cannot establish the existence of a constitutional violation. Even if we assume for the sake of argument that the defendant's claim would survive Golding review, it fails for two reasons.
First, the defendant conceded at oral argument before this court that his claim of lack of notice was predicated on the ramifications of overruling Goldson , which we have not done.[13] Second, the information afforded notice because it separately charged the defendant with assault of public safety personnel and interfering with an officer. To the extent this notice claim is *636 premised on the defendant's uncertainty as to what conduct corresponded to each charge, the confusion could have been remedied by filing a motion for a bill of particulars or raising the issue in the trial court. See, e.g., State v. Schovanec , supra, 326 Conn. at 328 n.7, 163 A.3d 581 ("We note that the defendant ... did not request a bill of particulars regarding count four, which contained the charge of larceny in the sixth degree.... Furthermore ... [b]y failing to raise the claim of double jeopardy before the trial court, the defendant contributed to the ambiguity that is now present in the record."). Indeed, the defendant conceded that he chose not to request a bill of particulars "because it would likely have made interfering not [a lesser included offense] of the assault, but a separate offense, and thereby increased the defendant's exposure to an additional year of incarceration." This concession undermines the defendant's argument that he lacked notice and suggests, rather, that the defendant was aware that the charges stemmed from distinct conduct and that he chose not to clarify for strategic reasons. **667 Finally, we address the defendant's argument that the two step process should parallel the test for determining whether a lesser included offense instruction should be given because that test prohibits a review of the evidence. We reject this argument. The defendant asserts, citing to State v. Tomlin , 266 Conn. 608, 835 A.2d 12 (2003), that Connecticut uses the cognate pleadings approach to determine whether one crime is a lesser included of another, a test he claims relies on the pleadings rather than the evidence presented at trial. This argument is incorrect because the cognate pleadings standard is one prong of a larger four-pronged test that does rely on evidence to determine whether a lesser included offense instruction is warranted. See id., at 617-18, 835 A.2d 12 (explaining that cognate pleadings approach is second prong of four-pronged test to determine if defendant is entitled to lesser included offense instruction). Indeed, two prongs of that four-pronged test envision review of the evidence. See State v. Jones , 289 Conn. 742, 764, 961 A.2d 322 (2008) ("With respect to the third prong, we must examine whether there is any possibility that the evidence introduced at trial would justify a conviction of the lesser included offense.... With respect to the fourth prong, we must determine whether the evidence that would have supported a conviction on the lesser included offense was disputed by the parties."). Even if it did not involve evidentiary review, the cognate pleadings test applies to a different context than that of the present case. Accordingly, the Appellate Court properly reviewed the evidence to determine that the offenses in question did not arise from the same act or transaction and that, as a result, his conviction did not violate double jeopardy.
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

We granted the defendant's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "In determining that the defendant's double jeopardy rights had not been violated, did the Appellate Court properly review the evidence at trial, rather than confining its inquiry to the allegations in the charging document?" State v. Porter , 323 Conn. 920, 920-21, 150 A.3d 1152 (2016).

The defendant also was convicted of a second count of assault of public safety personnel, which is not at issue in this appeal, and one count of possession of a narcotic substance in violation of General Statutes § 21a-279 (a). Although the jury also found the defendant guilty of possession of a controlled substance in violation of General Statutes § 21a-279 (c), the trial court subsequently dismissed that charge.

The defendant conceded before the Appellate Court that his double jeopardy claim was unpreserved and sought review under State v. Golding , 213 Conn. 233, 567 A.2d 823 (1989). State v. Porter , supra, 167 Conn. App. at 286, 142 A.3d 1216. "A defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation ... exists and ... deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; footnote omitted.) State v. Golding , supra, at 239-40, 567 A.2d 823 ; see In re Yasiel R ., 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of Golding ). We agree with the Appellate Court that the record is adequate and that the double jeopardy claim is of constitutional magnitude. See State v. Devino , 195 Conn. 70, 73, 485 A.2d 1302 (1985) ("The defendant's claim of double jeopardy is also raised for the first time on appeal. Since this claim involves a question of a fundamental constitutional right, it is reviewable ....").

Blockburger v. United States , 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

This two step process is consistent with federal law. See Blockburger v. United States , 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not" [emphasis added] ); State v. Goldson , supra, 178 Conn. at 424, 423 A.2d 114 (applying Blockburger test through two step process); see also Brown v. Ohio , 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (restating Blockburger test). We observe that this two step process is also logical, because a test that looks only to the statutory provisions, and does not consider whether offenses arose from the same act or transaction, would prohibit a defendant from being convicted on multiple counts of the same crime when committed against different individuals. For example, such a test would result in double jeopardy violations where a defendant is convicted on multiple counts of murder after killing seven different victims in an attack-this simply cannot be the case. See, e.g., Whitfield v. Ricks , Docket No. 01 Civ. 11398 (LAK), 2006 WL 3030883 (S.D.N.Y. October 24, 2006) (The court rejected an ineffective assistance of counsel claim pertaining to appellate counsel's failure to argue a double jeopardy violation for multiple charges of weapons possession, attempted murder, and assault. Such a claim would have been meritless, because "the evidence indicated that [the] [p]etitioner fired multiple shots at several different people ... [and] [h]e was therefore not charged with multiple offenses for a single act.").

We observe that this approach is consistent with federal law. See, e.g., United States v. Benoit , 713 F.3d 1, 17-18 (10th Cir. 2013) (looking beyond charging documents to determine that lower court must vacate one of defendant's convictions for both receipt and possession of child pornography where, "[i]n light of the record as a whole, it is clear that [the defendant] was convicted ... based on the same conduct"). Indeed, the United States Court of Appeals for the Second Circuit has looked beyond the charging documents to the trial evidence in evaluating whether offenses arose from the same act or transaction. See, e.g., United States v. Wilke , 481 Fed. Appx. 647, 649 (2d Cir.) (holding that conviction for both receipt and possession of child pornography was not plain error, because prohibition against double jeopardy was not implicated given that defendant was not "in fact convicted for the same conduct," because "evidence at trial indicated that he had the pornographic video on both a computer and an external hard drive"), cert. denied, 568 U.S. 862, 133 S.Ct. 217, 184 L.Ed.2d 112 (2012).

Although this court's earlier cases touch on related issues, and State v. Licari , 132 Conn. 220, 226, 43 A.2d 450 (1945), even appears to consider evidence while determining whether charges were part of a continuous offense or separate transactions, they do not squarely address whether a court may review evidence at step one.

It is logical that the court would allow review of the evidence at step one because courts do not always have the luxury of relying on a bill of particulars to determine whether the offenses stem from a single act or transaction. See, e.g., State v. Schovanec , supra, 326 Conn. at 328 n.7, 163 A.3d 581 ("[w]e note that the defendant ... did not request a bill of particulars regarding count four, which contained the charge of larceny in the sixth degree"). Without a bill of particulars, a court has only two resources to analyze a defendant's double jeopardy claim at step one: the information and the evidence presented at trial.

This court addressed an additional double jeopardy claim in Snook , in which it reviewed the substitute information, rather than the evidence, at step one. State v. Snook , supra, 210 Conn. at 260-61, 555 A.2d 390. Given this court's reliance on evidence elsewhere in Snook , the opinion cannot be read to prohibit the review of evidence at step one.

We reject the defendant's contention that State v. Brown , supra, 299 Conn. at 640, 11 A.3d 663, State v. Kulmac , supra, 230 Conn. at 43, 644 A.2d 887, and State v. Miranda, supra, 260 Conn. at 93, 794 A.2d 506, can be distinguished from the present case because the charging documents in each case provided more specificity than the information in the present case. The relevant inquiry is whether Goldson bars a court from considering evidence at step one regardless of the parameters of the charging documents. That these cases consider evidence shows that it does not. Furthermore, it is logical that there would be even more reason to review the evidence in a case in which the information is ambiguous and there is no bill of particulars because the evidence would provide clarity where it is otherwise lacking.

As a result, there is no need to move on to step two and perform a Blockburger analysis of the two charges because, when "we conclude that the charges may not have occurred from the same transaction, it is unnecessary for us to proceed to step two of the analysis." State v. Schovanec , supra, 326 Conn. at 328, 163 A.3d 581.

Thus, we reject the defendant's related argument that, even if the charge of interfering with an officer stems from the defendant's attempt to swallow the marijuana, it is part and parcel of the assault charge and arises out of the same act or transaction. Rather, as we have already explained, the attempt to swallow the marijuana and the assault of public safety personnel were separate acts warranting separate charges. Although we recognize that, on some level, the offenses appear closely related, that alone is not a determinative consideration. See, e.g., State v. Schovanec , supra, 326 Conn. at 329, 163 A.3d 581 (upholding conviction of separate offenses resulting from theft of wallet and use of credit card that had been in wallet). We are also not persuaded by the defendant's related argument that the Appellate Court improperly concluded that the offenses were premised on different conduct because the state did not prove when Donnelly's injury occurred.
Therefore, we also reject the defendant's argument that, "[b]ecause the information alleged that both offenses were committed at the same time and place, the defendant met his burden of showing the charges arose out of the same act or transaction." This statement cannot be correct, as it would mean step one must be decided entirely in terms of temporal proximity. If true, two completely distinct crimes committed by the same individual at the same location and time would trigger double jeopardy.
The defendant tries to qualify this sweeping assertion by arguing that, "as a corollary of this rule, if the charging documents are ambiguous, the court must construe them in the defendant's favor." The only controlling precedent the defendant offers in support of this argument is Goldson , which the defendant misreads. Admittedly, this court stated in Goldson that, "[i]f separate charges explicitly addressing different temporal aspects of the same conduct do not avoid the double jeopardy clause, surely an information and bill of particulars stipulating a single date and time cannot do so." State v. Goldson , supra, 178 Conn. at 425, 423 A.2d 114. However, the court made that statement in response to the state's "assertion that possession of the heroin may have continued beyond the time charged ...." Id. That argument is exactly the sort of temporal severability theory that Brown v. Ohio , supra, 432 U.S. at 161, 97 S.Ct. 2221, forecloses. As we have already explained, however, that is not the theory in the present case, as the state conceded that the offenses occurred at the same time and place but argued that they were the result of distinct acts.
The defendant further relies on a handful of Appellate Court decisions, including State v. Mincewicz , 64 Conn. App. 687, 688, 781 A.2d 455 (2001), that extended Goldson to require that ambiguous charging documents stating the same location and time must be construed in favor of the defendant. This court has not adopted that rule, and the Appellate Court has accordingly abandoned it. See State v. Porter , supra, 167 Conn. App. at 292, 142 A.3d 1216 ("[w]e conclude that [State v. Brown , supra, 299 Conn. at 640, 11 A.3d 663 ] implicitly overruled Mincewicz , and that ... where the information and bill of particulars, if any, do not separate a transaction into separate parts, the reviewing court has the obligation to determine whether the multiple convictions reasonably could have been predicated on different conduct").

To the extent that this concession was premised on the defendant's incorrect interpretation of the holding of Goldson , the defendant's notice argument is still not persuasive for the second reason we outline.