******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DAREN S.*
## (AC 46859)

Elgo, Clark and Westbrook, Js.

*Syllabus*

Convicted of several crimes, including sexual assault in the first degree, in connection with an incident involving his adult stepdaughter, A, the defendant appealed. He claimed, inter alia, that the trial court improperly admitted evidence of uncharged sexual assaults he committed against A when she was a minor. *Held*:

The trial court properly exercised its discretion in permitting A to testify about three prior incidents of uncharged sexual assault against her for the purpose of establishing the defendant's propensity to engage in similar aberrant sexual behavior pursuant to the exception to the hearsay rule in a provision (§ 4-5) of the Connecticut Code of Evidence, as the charged offense and the uncharged misconduct both involved aberrant sexual behavior and were similar in nature and circumstance to the charged conduct, the uncharged misconduct was relevant in that it was not too remote in time from the charged offense and was committed against the same person, and the highly probative value of the uncharged misconduct evidence outweighed its prejudicial effect, which the court mitigated by giving the jury a limiting instruction.

This court was not convinced that the trial court abused its broad discretion by permitting the state to offer expert testimony about why A never reported the defendant's past misconduct against her, as the testimony was relevant to the jury's assessment of A's credibility, and the defendant provided no authority to support his argument that the expert's testimony was irrelevant simply because A's delay in reporting pertained to only the properly admitted uncharged misconduct evidence.

This court rejected the defendant's unpreserved claim that his conviction of both sexual assault in the first degree and sexual assault in the third degree amounted to multiple punishments for the same act in violation of

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and family violence, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

his fifth amendment right against double jeopardy, there having been no constitutional violation as required under *State* v. *Golding* (213 Conn. 233), as those two charged crimes were separate offenses under the test set forth in *Blockburger* v. *United States* (284 U.S. 299) because each required proof of a fact that the other did not, and the defendant's assertion that the *Blockburger* test was not controlling lacked merit, as the sexual assault statutes at issue and their legislative history contained no language suggesting any intent by the legislature to disallow multiple punishments if a person uses force to compel sexual intercourse with someone he knows to be a close relation.

The defendant could not prevail on his unpreserved claim that his conviction of both unlawful restraint and sexual assault in the first degree violated the fifth amendment's prohibition of double jeopardy because his restraint of A was merely incidental to his commission of first degree sexual assault, as the defendant failed to show that he received multiple punishments for the same offense.

The defendant's unpreserved claim that the trial court erred by not giving the jury an instruction regarding the charge of unlawful restraint similar to that required by *State* v. *Salamon* (287 Conn. 509), was not of constitutional magnitude, as *Salamon*'s holding and instructional requirement did not apply to unlawful restraint charges, and the instruction the court did give regarding unlawful restraint could not have misled the jury or resulted in an injustice.

Argued May 20—officially released November 18, 2025

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, sexual assault in the third degree and unlawful restraint in the first degree, brought to the Superior Court in the judicial district of New Haven, where the court, *Alander, J.*, denied the defendant's motions to preclude certain evidence; thereafter, the case was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Kayla R. Stephen*, deputy assistant public defender, for the appellant (defendant).

*Jonathan M. Sousa*, assistant state's attorney, with whom, on the brief were *John P. Doyle*, state's attorney,

*Kelly Davis*, senior assistant state's attorney, and *Danielle M. Hottin*, assistant state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, Daren S., appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (3), and unlawful restraint in the first degree in violation of General Statutes § 53a-95. The defendant claims that (1) the trial court improperly admitted evidence of uncharged sexual assaults of the victim, A, by the defendant when she was a minor; (2) the court improperly admitted expert testimony on delayed reporting by victims of child sexual abuse because A was an adult when the charged conduct occurred and did not delay reporting that conduct; (3) the convictions of sexual assault in the first degree and sexual assault in the third degree amounted to multiple punishments for the same act in violation of the guarantee against double jeopardy set forth in the fifth amendment to the United States constitution as applied to the states through the fourteenth amendment; and (4) the conviction of unlawful restraint in the first degree cannot stand because, consistent with our Supreme Court's holding in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), the restraint used was merely incidental to his commission of sexual assault in the first degree. We reject the defendant's claims and, accordingly, affirm the judgment of the court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. In 2009, A's mother, K, married the defendant, and the defendant became A's stepfather. K and the defendant had four children together. When A was

twelve years old, the defendant started hitting, kicking, punching, and yelling at her. At that time, A did not tell anyone that the defendant was abusing her because the defendant told her that, if she did, she and her siblings would be placed in foster care where they would experience worse abuse.

One day in the summer of 2014, when A was fourteen years old, she and the defendant went hiking together. When they got near the top of a mountain, the defendant began touching A over her clothing. He then pushed her down onto the ground, unbuttoned his pants, pulled down her pants, and penetrated her vagina with his penis. At the time, A did not tell anyone what had happened because she was afraid that the defendant would hurt her, K, or her siblings.

In January, 2016, when A was fifteen years old, she and the defendant were home alone together one afternoon while K left to pick up A's siblings from school. While K was gone, the defendant brought A to his room and pushed her down onto the bed. He penetrated her vaginally with his penis. Later that evening, because he was upset that she had not consented to having sex, he chased her around the house and tried to beat her. As a result of this incident, A believed that she could not trust people because, in her words, "[she] was running around saying he was going to kill [her] . . . and no one did anything about it."[1]

On December 24, 2016, when A was sixteen years old, she stayed up late to help K and the defendant prepare Christmas presents and decorations. That night, after A went to bed, she was awakened by the

---

[1] A testified at trial that the police were called but that she was unaware of whether anything had happened to the defendant as a result. The parties later entered into a stipulation at trial that the Hamden Police Department does not have any record of a call for service and/or report on that date with respect to the defendant, A, or the relevant address.

defendant touching her over her clothing in her bed-room. The defendant forced A out of her bedroom and made her perform oral sex on him in a hallway. K was asleep in her bedroom at the time.

Between 2016 and 2021, A participated in therapy services, but she did not tell her therapist about what the defendant had done to her because she was worried about her siblings being taken away and placed in foster care. A did, however, write about the defendant's abuse contemporaneously in her personal journals.

In the fall of 2018, A left for college but would return home for breaks and due to COVID-19 shutdowns. On January 17, 2021, A and the defendant got into an argument about washing dishes during which he followed A into her room and choked her. K heard yelling, so she went to A's room and saw the defendant put his hands on A's shoulders and push her down onto her bed. A called the police, but the defendant was not arrested.

In July, 2021, A had returned from college and was living at K's apartment with K, her four siblings, and the defendant. On July 18, 2021, K and the siblings were outside in the backyard with the defendant while A was inside the apartment in the kitchen. The defendant entered the kitchen and started touching A over her clothing around her breasts and genital area. A resisted, but the defendant grabbed her right wrist and pulled her down a hallway. A tried to pull away but was unsuc-cessful because the defendant was hurting her wrist. The defendant then pulled A into his bedroom, pushed her onto the bed, and pulled her pants and underwear down to her knees. A was not able to get up because the defendant had his body weight on top of her. The defendant spit on his hand and then unbuttoned his pants and penetrated her vagina with his penis. K walked into the bedroom about one minute later, the

defendant immediately stopped, and A pulled her pants up and ran to the kitchen. The defendant told K that he was giving A a massage and that his shorts fell down. K yelled at the defendant to get out of the apartment. K then went to the kitchen and asked A whether the defendant had penetrated her with his penis. A told K that he had, and then K called the police to report a rape.

When the police arrived at the house, Officer Jenna Davis of the Hamden Police Department interviewed A. A told Davis that the defendant had forced her into the bedroom, pushed her on the bed, and penetrated her vagina with his penis for approximately sixty to ninety seconds. A also told Davis that she was hesitant to fight back because she was in fear of being further assaulted. Davis asked A if the defendant had sexually abused her in the past, and A told Davis that he had. A also told Davis that K had walked into the bedroom during the assault. During the interview, A was crying. K, who was present for some of the interview, was supportive.

Police officers arrested the defendant on charges of sexual assault in the first degree in violation of § 53a-70 (a) (1) and unlawful restraint in the second degree in violation of General Statutes § 53a-96. Officers also seized evidence from the scene, including sheets from the bed, A's clothes, the defendant's clothes, and the defendant's phone. The state later obtained a buccal swab from the defendant's mouth.

A was transported to a hospital, where Vanessa Dixon, a sexual assault forensic examiner nurse, administered a sexual assault kit on A. Dixon conducted a physical examination of A, took some of her clothing, asked her questions, and swabbed her genitals. During Dixon's internal examination of A's genitals, she noted that A had a small tear in her genitals and blood in

her cervix, and that her cervix was open. Two police detectives interviewed A at the hospital.

On October 28, 2022, the state filed a substitute information charging the defendant in three counts. Count one charged the defendant with sexual assault in the first degree, alleging that, on July 18, 2021, he compelled A to engage in sexual intercourse by the use of force. Count two charged him with sexual assault in the third degree, alleging that, on July 18, 2021, he engaged in sexual intercourse with A knowing that she was his stepchild. Count three charged him with unlawful restraint in the first degree, alleging that, on July 18, 2021, he restrained A under circumstances that exposed her to a substantial risk of physical injury.

The court, *Alander, J.*, conducted a jury trial over four days from May 31 to June 5, 2023. The state presented the testimony of Davis; A; K; Angela Vialotti, a forensic science examiner with the state forensic laboratory; Dixon; Monica Vidro Madigan, a licensed clinical social worker who was offered as an expert witness on delayed reporting; and Frances Rue, a forensic science examiner with the state forensic laboratory who conducted DNA analysis. The defendant did not testify but presented testimony from a single witness, Anthony Frank Campagna, a clinical psychologist who treated A from May, 2020, through December, 2021. Campagna testified in relevant part that, although A had discussed the July 18, 2021 assault with him, she never reported any incidents of prior abuse by the defendant.

On June 5, 2023, the jury returned a verdict of guilty on all counts, which the trial court accepted and ordered recorded. On July 31, 2023, the court sentenced the defendant to a total effective term of fifteen years of incarceration, two years of which were a mandatory minimum, suspended after ten years, followed by ten years of probation with special conditions. The court

also issued a standing criminal protective order that, inter alia, prohibited the defendant from contacting the victim. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the trial court improperly admitted evidence of three instances of uncharged sexual assaults of A by the defendant when she was a teenager. According to the defendant, any probative value of this evidence was substantially outweighed by the risk of undue prejudice, and the admission of the evidence likely had a substantial impact on the jury's verdict. The state responds that the court, consistent with § 4-5 (b) of the Connecticut Code of Evidence[2] and *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008), reasonably concluded that the evidence was admissible to demonstrate the defendant's propensity for engaging in aberrant sexual behavior with A, and, pursuant to § 4-5 (c) of the Connecticut Code of Evidence, it also was admissible to provide relevant context with respect to the crimes charged. We agree with the state that the

[2] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person except as provided in subsection (b).

"(b) Evidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if: (1) the case involves aberrant and compulsive sexual misconduct; (2) the trial court finds that the evidence is relevant to a charged offense in that the other sexual misconduct is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circumstances to the aberrant and compulsive sexual misconduct at issue in the case; and (3) the trial court finds that the probative value of the evidence outweighs its prejudicial effect.

"(c) Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

court properly admitted the evidence of prior uncharged misconduct.

The following additional facts and procedural history are relevant to our discussion of this claim. Two months prior to trial, the state filed notice of its intent to offer uncharged misconduct evidence at trial regarding three prior assaults of A by the defendant when she was fourteen, fifteen, and sixteen years old. According to the state, the evidence of A's prior abuse by the defendant was admissible to show the defendant's propensity to engage in the type of sexual misconduct charged and to give relevant context and to " 'complete the whole picture' " for the jury.

On April 25, 2023, the defendant filed an objection and moved to preclude the uncharged misconduct evidence. The defendant argued that the policy rationales set forth in *DeJesus* justifying the admission of evidence of uncharged sexual misconduct was lacking in the present case; the prior misconduct was too remote in time and had occurred while A was a minor, whereas A was an adult when the charged crimes allegedly occurred; and, because the uncharged misconduct involved the same victim, it would unfairly bolster A's credibility. The defendant also argued that the resulting prejudice from the admission of evidence that the defendant sexually assaulted A when she was a child would substantially have outweighed any probative value of that evidence.

Two weeks before the trial, the court conducted a hearing regarding the uncharged misconduct evidence. After hearing arguments from counsel, the court ruled that evidence of the prior sexual abuse was admissible under *DeJesus*, as codified in § 4-5 (b) of the Connecticut Code of Evidence, because it (1) involved the same victim as did the charged assault, (2) involved similar conduct as the charged assault, and (3) was not too

remote in time. Although the court acknowledged that admitting the uncharged misconduct evidence could "raise the emotions" of the jurors, it believed that, because the prior assaults were committed against the same victim, the probative value of such evidence was "overwhelming . . . and outweigh[ed] any prejudicial impact." Moreover, the court concluded that it could give the jury a limiting instruction that would help to mitigate any prejudicial impact.

The trial court also concluded that the evidence of the uncharged misconduct was admissible because it helped to show the nature of the relationship between the defendant and the victim and "completes the story." The court explained that, to rule otherwise, would leave the jury "with a vacuum as to what was the nature of their relationship, if any, sexually, prior to age twenty-one."

At trial, during her direct examination, A testified that she initially had a good relationship with the defendant but that their relationship changed after he started physically abusing her when she was twelve years old and then began sexually abusing her when she reached fourteen years of age. At that point in A's testimony, the court gave the jury the following limiting instruction regarding the uncharged misconduct: "[T]he state is submitting evidence that the defendant engaged in sexual misconduct with [A] when she was a minor. The defendant has not been charged in this case with any offenses related to this alleged conduct. In a criminal case such as this in which the defendant is charged with a crime involving sexual misconduct, and in this case—the charges in this case involve alleged sexual misconduct when [A] was an adult . . . evidence of other misconduct is . . . admissible and may be considered to prove that the defendant had the propensity or tendency to engage in the type of criminal sexual behavior with which he is charged; however, evidence

of prior misconduct on its own is not sufficient to prove the defendant guilty of the crimes charged in the information. It is for you to determine whether the defendant committed any uncharged sexual misconduct and, if so, the extent, if any, to which the evidence establishes that the defendant had the propensity or tendency to engage in criminal sexual behavior. . . . [A]s I said, the defendant has not been charged in this case with any offenses related to prior misconduct that's being claimed here when [A] was a minor.

"The [state] has also offered evidence of instances of prior sexual misconduct between [A] and the defendant for the limited purpose of showing or explaining the full extent of the relationship between the defendant and [A] and to establish the complete story of what happened to [A]. It is for you to determine, one, whether such acts occurred, and, two, if they occurred, whether they establish what the state . . . seeks to establish."

Following the limiting instruction, A provided detailed testimony about the three prior instances of sexual assault by the defendant that occurred in the summer of 2014 and in January and December, 2016, and how the defendant's threatening behavior toward her kept her from reporting those assaults. After A finished testifying regarding the uncharged assaults, the trial court repeated its instruction to the jury that the defendant was not charged with any crimes related to the alleged assaults that occurred when the victim was a minor.

During its final charge to the jury, the trial court gave a more detailed instruction regarding the uncharged sexual abuse: "The state has submitted evidence that the defendant engaged in sexual misconduct with [A] when she was between the ages of fourteen and seventeen years old. The defendant has not been charged in this case with any offenses related to this alleged conduct. In a criminal case such as this, in which the

defendant is charged with a crime involving sexual misconduct, evidence of the defendant's commission of other sexual misconduct is [admissible] and may be considered to prove that the defendant had the propensity or a tendency to engage in the type of criminal sexual behavior with which he is charged. However, evidence of prior misconduct on its own is not sufficient to prove the defendant guilty of the crimes charged in the information. It is for you to determine whether the defendant committed any uncharged sexual misconduct and, if so, the extent, if any, to which that evidence establishes that the defendant had the propensity or a tendency to engage in criminal sexual behavior. The defendant has not been charged in this case with any offenses related to this prior misconduct. The state has also offered evidence of instances of prior misconduct between [A] and the defendant for the limited purpose of showing or explaining the full extent of the relationship between the defendant and [A] and to establish the complete story of what had happened to [A]. It is for you to determine, one, whether such acts occurred and, two, if they occurred, whether they establish what the state seeks to establish. Bear in mind as you consider this evidence that, at all times, the state has the burden of proving that the defendant committed each of the elements of the offenses charged in the information. I remind you that the defendant is not on trial for any act, conduct or offense not charged in the information."

We turn next to our standard of review and generally applicable legal principles pertinent to the defendant's claim. "The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only [if] abuse of discretion is manifest or where an injustice

appears to have been done. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Heck*, 128 Conn. App. 633, 638, 18 A.3d 673, cert. denied, 301 Conn. 935, 23 A.3d 728 (2011).

"Generally, [e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person . . . ." (Internal quotation marks omitted.) *State* v. *Daren Y.*, 350 Conn. 393, 418, 324 A.3d 734 (2024). "Exceptions exist, however, and [e]vidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if certain conditions are satisfied. . . .

"Consequently, this court has long recognized, and our Code of Evidence has codified, that such evidence is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if: (1) the case involves aberrant and compulsive sexual misconduct; (2) the trial court finds that the evidence is relevant to a charged offense in that the other sexual misconduct is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circumstances to the aberrant and compulsive sexual misconduct at issue in the case; and (3) the trial court finds that the probative value of the evidence outweighs its prejudicial effect. . . .

"As [our Supreme Court] acknowledged in [*State* v. *DeJesus*, supra, 288 Conn. 468], strong public policy reasons . . . exist to admit evidence of uncharged misconduct more liberally in sexual assault cases than in

other criminal cases. . . . First, in sex crime cases generally, and in child molestation cases in particular, the offense often is committed surreptitiously, in the absence of any neutral witnesses. Consequently, courts allow prosecutorial authorities greater latitude in using prior misconduct evidence to bolster the credibility of the complaining witness and to aid in the obvious difficulty of proof. . . . Second, because of the unusually aberrant and pathological nature of the crime of child molestation, prior acts of similar misconduct, as opposed to other types of misconduct, are deemed to be highly probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . and assist the jury in assessing the probability that a defendant has been falsely accused of such shocking behavior." (Citations omitted; internal quotation marks omitted.) Id., 418–19.

Having carefully reviewed the record in the present case, we conclude that the trial court properly exercised its discretion in admitting A's testimony regarding the three prior instances of uncharged sexual assault by the defendant. As we previously set forth, subsection (b) of § 4-5 of the Connecticut Code of Evidence codifies the exception, first recognized in *DeJesus*, that courts may admit evidence of prior sexual misconduct to show a defendant's propensity to engage in similar misconduct. The court in the present case, prior to trial, made all the determinations required under the rule to admit evidence of prior sexual misconduct for propensity purposes.

Specifically, the trial court was required to determine whether the present case in which the prior misconduct evidence was being offered "involves aberrant and compulsive sexual misconduct . . . ." Conn. Code Evid. § 4-5 (b) (1). The court properly determined that both the charged offense and the prior uncharged misconduct involved aberrant sexual behavior. With respect

to the charged offenses, the defendant was alleged to have physically restrained his stepdaughter and forced her to engage in penile-vaginal intercourse. The uncharged misconduct evidence similarly involved the defendant having sexually assaulted his stepdaughter while she was a minor. Such behavior clearly constitutes aberrant and potentially compulsive sexual misconduct and was sufficient to support an initial determination by the court as to the applicability of the propensity exception in this case.

The trial court also was required to determine if A's testimony about the prior sexual misconduct was relevant to the offense currently charged. The relevancy requirement is met if the prior sexual misconduct "is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circumstances to" the charged misconduct. Conn. Code Evid. § 4-5 (b) (2). The court properly found that each of these requirements was met.

First, the defendant's charged sexual assault of A occurred when she was twenty-one years old. The prior misconduct occurred when A was a teenager, between the ages of fourteen and seventeen years old. "[T]he inquiry as to remoteness is to be resolved with reference to the period between the cessation of the prior misconduct and the beginning of the charged sexual abuse." *State* v. *Romero*, 269 Conn. 481, 499 n.20, 849 A.2d 760 (2004). Accordingly, only four years had passed between the cessation of the uncharged assaults and the charged conduct, and the earliest misconduct occurred only seven years prior to the charged conduct. Our Supreme Court has upheld the admission of more remote uncharged sexual misconduct evidence. See id. (uncharged conduct occurring nine years prior to charged conduct was proximate in time); see also *State* v. *Jacobson,* 283 Conn. 618, 632–33, 930 A.2d 628 (2007)

(uncharged conduct occurring between six to ten years prior to charged conduct was proximate in time). We thus agree with the trial court that, viewing this factor in conjunction with the other relevancy factors, the uncharged sexual assaults of A by the defendant were not too remote in time so as to render them inadmissible for propensity purposes.

Second, the trial court also properly determined that the sexual assaults were committed against "a person similar to the alleged victim . . . ." Conn. Code Evid. § 4-5 (b) (2). Here, both the uncharged and charged assaults were perpetrated against A. See *State* v. *Andersen*, 132 Conn. App. 125, 135, 31 A.3d 385 (2011) ("[b]ecause the prior misconduct involved the same victim, there was no issue as to whether it was committed upon a person similar to the prosecuting witness"), cert. denied, 305 Conn. 906, 44 A.3d 182 (2012).

Finally, the sexual assaults at issue were sufficiently similar in nature and circumstances. The charged conduct involved the defendant holding A down to engage in penile-vaginal intercourse. The first and second instances of uncharged misconduct also involved the defendant holding down the victim and forcing penile-vaginal intercourse. The third instance involved forced fellatio and digital penetration. Thus, all charged and uncharged misconduct involved the defendant forcing A to engage in a penetrative sexual act and is sufficiently similar to uphold the trial court's determination that the state had satisfied the final *DeJesus* criteria with respect to the uncharged misconduct. See *State* v. *Smith*, 313 Conn. 325, 337, 96 A.3d 1238 (2014) (charged crime and uncharged misconduct sufficiently similar because both were sexual assaults in which defendant choked victim).

The court next properly considered whether the probative value of A's testimony outweighed its prejudicial

effect and provided the jury with a limiting instruction that comported with the instruction set forth in *DeJesus*, the purpose of which was to limit any prejudicial effect. See *State* v. *DeJesus*, supra, 288 Conn. 474 n.36. It is axiomatic that "[t]he primary responsibility for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion. . . . [Accordingly, appellate] review of such rulings is limited to the questions of whether the trial court correctly applied the law and [whether it] reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 396, 844 A.2d 810 (2004). Although the defendant claims that there is a strong likelihood that the admission of A's testimony unduly aroused the jurors' emotions and that this prejudicial effect outweighed any probative value, we are unconvinced.[3]

The trial court concluded that the similarities between the charged conduct and the prior sexual assaults of A made the uncharged acts highly probative. Given that the defendant was charged with sexually assaulting his stepdaughter while his wife was in the house, it is not likely that A's testimony that similar

---

[3] As explained in the commentary to § 4-3 of the Connecticut Code of Evidence, which governs the exclusion of evidence on the ground of prejudice, "[a]ll evidence adverse to an opposing party is inherently prejudicial because it is damaging to that party's case. . . . For exclusion, however, the prejudice must be unfair in the sense that it unduly arouse[s] the jury's emotions of prejudice, hostility or sympathy . . . or tends to have some adverse effect upon [the party against whom the evidence is offered] beyond tending to prove the fact or issue that justified its admission into evidence." (Citations omitted; internal quotation marks omitted.) The commentary further provides that "unfair surprise [is] a factor to be weighed against the probative value of the evidence" and that the court may "exclude relevant evidence [if] its probative value is outweighed by factors such as confusion of the issues or misleading the jury . . . ." (Citations omitted; internal quotation marks omitted.) Conn. Code Evid. § 4-3, commentary.

acts had occurred when she was a teenager would have unduly aroused the emotions or passions of the jurors further. The testimony regarding the prior misconduct was relatively brief, did not raise any distracting side issues, and the defense was not surprised by the testimony, having been given notice that the state intended to offer it as uncharged misconduct. Viewed in the context of the trial as a whole, we are not persuaded that the court abused its discretion by admitting A's testimony.

## II

The defendant next claims that the trial court improperly admitted expert testimony on delayed reporting by victims of child sexual abuse because, with respect to the charged conduct, A was an adult and there was no delay in reporting the charged misconduct.

The following additional facts and procedural history are relevant to the present claim. Prior to trial, the state filed a notice disclosing an expert to testify regarding delayed reporting and grooming in the context of child sexual abuse.[4] The defendant filed a motion to preclude such testimony, arguing that, because he was charged with sexual assault of an adult and there was no evidence of delayed reporting with respect to that charge, it was not relevant. The defendant contended that, even if there were "some relevance" to the three instances of alleged prior misconduct, allowing the proffered expert testimony ran the risk of unfairly bolstering A's credibility with respect to the uncharged misconduct. The court later held a hearing on all outstanding pretrial motions at which it denied the defendant's motion to preclude the expert testimony regarding delayed reporting, concluding that, having decided to admit the evidence of

---

[4] Approximately one week before trial, the state gave notice that the expert it had initially disclosed was no longer available and that the state would instead call Madigan to testify consistent with the state's initial proffer.

uncharged misconduct, the expert testimony was relevant to the jury's evaluation of A's credibility regarding that evidence.[5]

At trial, Madigan testified on direct examination by the state that she was not involved with A's case and had never met with A. She explained to the jury the concept of delayed reporting and that a victim of child sexual abuse will have various reasons why he or she might delay reporting the abuse. If the victim knows the abuser or the abuser is a family member, the child may be afraid to disclose because of fear or threats of

[5] The colloquy between the trial court and defense counsel at the hearing was, in relevant part, as follows:

"[Defense Counsel]: . . . [T]he defense [having done] a very wide search both in this state, outside of this state, and federally, can find no instance where an expert was allowed to testify only to a subject matter that pertains to uncharged misconduct. . . .

"The Court: . . . [T]his might be that rare case where the defendant is not on trial for sex assault when the person was a child that they're now on trial for an adult sexual assault when there was prior—that's—I've never had a case like that. I've never had—usually at some point the child disclosed, but they may disclose as an adult but it's for when they were a child. So, the fact that there's no case law on this doesn't necessarily mean I'm wrong to let it in; it just means that it doesn't usually occur this way. . . .

"[Defense Counsel]: . . . Your Honor, the defense would just say that this is not . . . this may be a special circumstance for Your Honor and maybe others in this courtroom; however, this is not arising simply because it's a sexual assault case. If someone is charged with a murder through a shooting and the defendant is faced with uncharged misconduct of a robbery, the state is not allowed to bring in a gun expert to talk about the gun used in the robbery. It's just—

"The Court: No, because there's not going to be any evidence of the robbery in the murder trial.

"[Defense Counsel]: But now there's evidence of this sexual assault and late disclosure where that would not have taken place if it was just the charged conduct because, again, there's no delayed disclosure when it comes to the charged conduct. The expert is testifying simply to the uncharged misconduct.

"The Court: Yeah, no, I understand your point. I just don't think that's an argument for keeping it out. If I'm letting the uncharged misconduct in, which I am, it then becomes relevant to issues in this case; and if I'm wrong on the first, I'll be wrong on this one. Anything else?

[Defense Counsel]: No, thank you, Your Honor."

ramifications to the family, including other siblings. Such fears may continue even when the child becomes an adult. Madigan explained that a child victim might even choose to maintain a relationship with the perpetrator into adulthood. Madigan also testified about grooming type behavior and its effect on victims.

On cross-examination, the defendant challenged Madigan's credibility as a neutral expert witness on the basis of her training, including on how to present forensic interview evidence before a court. She reiterated that she had never met with A, reviewed the police reports in this case, or conducted a forensic interview. Madigan testified that children sometimes do report sexual abuse immediately after it occurs and agreed with defense counsel that a report of sexual abuse is not more likely true just because it is delayed. She also agreed that there was no checklist of behaviors from which a professional could conclude with certainty that someone had in fact been sexually abused.

Regarding the law pertaining to expert testimony, "[t]he trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The test for admissibility of expert testimony is whether (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Citation omitted; internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 12–13, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

Because the determination of a witness' credibility and the weight to be accorded to his or her testimony is solely the function of the jury as the trier of fact, "[e]xpert witnesses cannot be permitted to invade the province of the jury by testifying as to the credibility

of a particular witness or the truthfulness of a particular witness' claims. . . . An expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by the trier of fact . . . ." (Internal quotation marks omitted.) *State* v. *Favoccia*, 306 Conn. 770, 786, 51 A.3d 1002 (2012). "In a sexual assault case wherein the subject of the perpetrator's identity is not a matter of dispute, and the defense focuses on the credibility of the complainant, the ultimate issue . . . [is] whether the [complainant] had been sexually abused . . . and expert testimony vouching for the complainant's credibility is not helpful to the jury in deciding [that] precise question . . . ." (Citations omitted; internal quotation marks omitted.) Id., 786–87.

Our Supreme Court has held that, in cases in which "defense counsel has sought to impeach the credibility of a complaining minor witness in a sexual abuse case, based on inconsistency, incompleteness or recantation of the victim's disclosures pertaining to the alleged incidents, *the state may offer expert testimony that seeks to demonstrate or explain in general terms the behavioral characteristics of child abuse victims in disclosing alleged incidents.* . . . Such expert testimony is admissible because the consequences of the unique trauma experienced by minor victims of sexual abuse are matters beyond the understanding of the average person. . . . Consequently, expert testimony that minor victims typically fail to provide complete or consistent disclosures of the alleged sexual abuse is of valuable assistance to the trier in assessing the minor victim's credibility." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., 787. Expert testimony on delayed disclosure does not usurp the jury's function of assessing the credibility of witnesses, provided "the expert was not asked about the credibility of the particular victims in this case, nor did she testify as to their credibility. The cases that have considered

this issue have noted the critical distinction between admissible expert testimony on general or typical behavior patterns of minor victims and inadmissible testimony directly concerning the particular victim's credibility.'' (Internal quotation marks omitted.) Id., 788.

In the present case, the sole witness called by the defendant at trial was Campagna, A's former therapist who testified that A never reported any past abuse by the defendant. We agree with the state that, without the expert testimony on delayed reporting and grooming, ''the jury would have been left to evaluate the victim's credibility based on the widely held misconception that someone in [A's] position would have immediately reported the prior abuse or fought harder to prevent the charged assault from occurring.'' We also agree that the defendant has provided no authority supporting his argument that Madigan's testimony was rendered irrelevant simply because, in the present case, the delay in reporting pertained only to the properly admitted uncharged misconduct, not to the charged offenses. In short, we are unconvinced that the trial court abused its broad discretion by admitting Madigan's expert testimony on the ground that it was relevant to the jury's assessment of A's credibility, and, in particular, to why she never reported the defendant's prior misconduct. We have considered all of the defendant's arguments to the contrary and reject them.

III

The defendant also claims on appeal that his conviction of sexual assault in the first degree and sexual assault in the third degree amounted to multiple punishments for the same act in violation of his right against double jeopardy. Although the defendant concedes that his claim was not preserved before the trial court, he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re*

*Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[6] Although we agree with the defendant that the record before us is adequate for review and that his claim is of constitutional magnitude; see *State* v. *Porter*, 328 Conn. 648, 654 n.3, 182 A.3d 625 (2018); we disagree, however, that he can prevail under *Golding*'s third prong because we conclude that there was no constitutional violation. Accordingly, we reject the defendant's double jeopardy claim.

The double jeopardy clause of the fifth amendment to the United States constitution, which is applicable to the states through the due process clause of the fourteenth amendment to the United States constitution, provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const., amend. V. "This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial. . . .

"Double jeopardy analysis in the context of a single trial is a [two step] process, and, to succeed, the defendant must satisfy both steps. . . . First, the charges must arise out of the same act or transaction [step one]. Second, it must be determined whether the charged crimes are the same offense [step two]. Multiple punishments are forbidden only if both conditions are met. . . . At step two, we [t]raditionally . . . have applied the [test set forth in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)

---

[6] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

(*Blockburger* test)] to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . .

"Our case law has been consistent and unequivocal as to whether a court may consider evidence offered at the trial in the second step of this two step process: the answer is a resounding no. . . . This court has consistently held that the *Blockburger* test conducted at step two is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Porter*, supra, 328 Conn. 655–56.

As previously stated, in count one of the operative information, the state charged the defendant with sexual assault in the first degree in violation of § 53a-70 (a) (1), which provides in relevant part that "[a] person is guilty of sexual assault in the first degree when such person . . . compels another person to engage in sexual intercourse by the use of force against such other person . . . or by the threat of use of force against such other person . . . which reasonably causes such person to fear physical injury to such person . . . ." The state alleged in the information that, on July 18, 2021, the defendant had compelled A "to engage in sexual intercourse, to wit: penile penetration of the vaginal opening, by the use of force against [A] and/or by the threat of the use of force against [A] which reasonably caused [A] to fear physical injury . . . ." The trial court instructed the jury that, to find the defendant guilty on this count, it must find that he compelled

A to engage in sexual intercourse and that he did so by the use of force.

Count two of the information charged the defendant with sexual assault in the third degree in violation of § 53a-72a (a) (3), which provides in relevant part that "[a] person is guilty of sexual assault in the third degree when such person . . . engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in [General Statutes §] 46b-21."[7] The state alleged with respect to the second count that, on July 18, 2021, the defendant "engage[d] in sexual intercourse with [A], whom he knew was . . . his stepchild." The court instructed the jury that, to find the defendant guilty on count two, it must find that the defendant and A engaged in sexual intercourse and that the defendant knew at that time that the victim was his stepchild.

The parties agree, and we concur, that the two sexual assault convictions arose from the same transaction, namely, the defendant's actions on July 18, 2021, during which he forcibly penetrated his stepdaughter's vagina with his penis. Accordingly, the defendant has satisfied the first step of the double jeopardy analysis. Having reviewed the statutes and charging instruments, however, we conclude that the two sexual assault provisions that form the basis of the defendant's convictions each require proof of a fact that the other does not. Sexual assault in the first degree, in the manner charged, required proof of the use of force against A by the defendant; sexual assault in the third degree does not require a finding of use of force. Sexual assault in the third degree in the manner charged required proof that A was closely related to the defendant, specifically, that

---

[7] General Statutes § 46b-21 prohibits and voids any marriage between a person and his or her "parent, grandparent, child, grandchild, sibling, parent's sibling, sibling's child, stepparent or stepchild."

she was his stepchild; sexual assault in the first degree requires no such proof. Consequently, because each provision requires proof of a fact which the other does not, the *Blockburger* test is not met here and, therefore, the two crimes charged are separate offenses for which the defendant properly may be sentenced without implicating double jeopardy.

The defendant acknowledges that appellate courts have rejected similar double jeopardy challenges to multiple convictions for varying degrees of sexual assault involving a single act of penetration, citing *State* v. *Kulmac*, 230 Conn. 43, 644 A.2d 887 (1994), *State* v. *Carlos P.*, 171 Conn. App. 530, 157 A.3d 723, cert. denied, 325 Conn. 912, 158 A.3d 321 (2017), *State* v. *Mezrioui*, 26 Conn. App. 395, 602 A.2d 29, cert. denied, 224 Conn. 909, 617 A.2d 169 (1992), and *State* v. *Russell*, 25 Conn. App. 243, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991). Nevertheless, he argues that the *Blockburger* statutory analysis should not control here because the legislature purportedly has expressed an intent to disallow multiple punishments like those imposed on the defendant, which is an argument that was not addressed in any of the aforecited cases. This argument lacks merit.

If the *Blockburger* test is not satisfied, as in the present case, "there is a presumption, albeit a rebuttable one, that a defendant's conviction under [different statutes] for the same transaction does not violate the double jeopardy clause." *State* v. *Wright*, 319 Conn. 684, 692, 127 A.3d 147 (2015). The *Blockburger* test, however, as "a rule of statutory construction . . . serves as a means of discerning [legislative] purpose [and] the rule should not be controlling [if], for example, there is a *clear indication of contrary legislative intent.* . . . Thus, the *Blockburger* test creates only a rebuttable presumption of legislative intent, [and] the test is not controlling [if] a contrary intent *is manifest.* . . . [If]

the conclusion reached under *Blockburger* is that the two crimes do not constitute the same offense . . . the defendant [retains the burden] to demonstrate *a clear legislative intent* to the contrary." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 690. The defendant fails to satisfy that burden here.

The statutes at issue contain no language that suggests *any* intent by the legislature, let alone an intent that is clear and manifest, to disallow multiple punishments if a person, through force, compels sexual intercourse with someone they know to be a close relation such as a stepchild. The defendant has not directed us to any such statutory language or to case law construing the statutes in this fashion. Moreover, the defendant's reliance on the legislative history is wholly misguided. All that we can discern from the brief exchanges between legislators relied on by the defendant, is that there was an awareness that someone who had intercourse with a close relative who was also underage faced the possibility of being charged under multiple statutes. There is no indication in the exchanges or in any other portion of the legislative history that the legislature clearly intended to disallow multiple punishments, as is suggested by the defendant.

Moreover, we agree with the state that punishment for sexual assault in the first degree and sexual assault in the third degree pursuant to § 53a-72a (a) (3) serves distinct legislative purposes and that, accordingly, multiple punishments are justified. Whereas the purpose of criminalizing sexual assault in the first degree is "the protection of *all persons* from being compelled to engage in sexual activity by force or threat of force"; (emphasis added; internal quotation marks omitted) *State* v. *Kulmac*, supra, 230 Conn. 70; sexual assault in the third degree under § 53a-72a (a) (3) is intended to criminalize sexual activity between close relatives, whether coerced or consensual, the purpose being "to

promote and protect family harmony, to protect children from the abuse of parental authority, and because society cannot function in an orderly manner when age distinctions, generations, sentiments and roles in families are in conflict." (Internal quotation marks omitted.) *State* v. *John M.*, 94 Conn. App. 667, 693, 894 A.2d 376 (2006), rev'd on other grounds sub nom. *State* v. *John F.M.*, 285 Conn. 528, 940 A.2d 755 (2008). Because the two statutes each have unique legislative purposes in addition to requiring proof of different factual elements, we are satisfied that punishment under both statutes does not offend the fifth amendment's prohibition against double jeopardy.

## IV

The defendant's final claim is that his conviction of unlawful restraint in the first degree should be reversed because the act of restraint was merely incidental to his commission of sexual assault in the first degree. The defendant effectively seeks an expansion of our Supreme Court's holding in *State* v. *Salamon*, supra, 287 Conn. 509. The precise nature of the defendant's claim and the analytical pathway he suggests that we follow is not readily apparent from his briefing of this claim. We, like the state, construe the defendant's analysis as asserting either that his conviction of unlawful restraint violates constitutional double jeopardy principles, that the court committed instructional error by not giving a *Salamon* type instruction, or both. The defendant's claim nevertheless fails on either ground.

The defendant again acknowledges that the present claim is unpreserved, but he seeks *Golding* review or, alternatively, asks us to exercise our supervisory authority over the administration of justice to reach the claim. As already stated, *Golding* review is available for unpreserved double jeopardy claims arising from a single trial. See *State* v. *Porter*, 167 Conn. App. 281, 286

n.4, 142 A.3d 1216 (2016), aff'd, 328 Conn. 648, 182 A.3d 625 (2018). Moreover, this court has also afforded *Golding* review to an unpreserved claim that a trial court failed to give a *Salamon* instruction, analogizing such an omission to "[a]n improper instruction on an element of an offense," which "is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Strong*, 122 Conn. App. 131, 139, 999 A.2d 765, cert. denied, 298 Conn. 907, 3 A.3d 73 (2010). For the reasons that follow, we conclude that the defendant's claim, whether analyzed under double jeopardy principles or as a claim of instructional error, fails under the third prong of *Golding* because the defendant has failed to meet his burden of showing the existence of a constitutional violation.[8]

Before addressing the two distinct aspects of the defendant's claim, our discussion will be aided by a brief review of our Supreme Court's decision in *State* v. *Salamon*, supra, 287 Conn. 509. In *Salamon*, our Supreme Court overruled its prior, long-standing interpretation of our kidnapping statutes, pursuant to which it previously had held that "a person who restrains another person with the intent to prevent that person's liberation may be convicted of kidnapping even though the restraint involved in the kidnapping is merely incidental to the commission of another offense perpetrated against the victim by the accused." Id., 513. The court did so after "examination of the common law of kidnapping, the history and circumstances surrounding the promulgation of our current kidnapping statutes and the policy objectives animating those statutes, [and concluded as follows]: Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from

[8] Because we review both aspects of the defendant's claim under *Golding*, we do not consider whether review in this case would be warranted through an exercise of our supervisory authority. See *State* v. *Elson*, 311 Conn. 726, 767–71, 91 A.3d 862 (2014).

unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime.

"Our failure previously to recognize such an exclusion largely has eliminated the distinction between restraints and abductions and effectively has merged the statutory scheme such that it now closely resembles the provision that the scheme was intended to replace. Unfortunately, that interpretation has afforded prosecutors virtually unbridled discretion to charge the same conduct either as a kidnapping or as an unlawful restraint despite the significant differences in the penalties that attach to those offenses. Similarly, our prior construction of the kidnapping statutes has permitted prosecutors—indeed, it has encouraged them—to include a kidnapping charge in any case involving a sexual assault or robbery. In view of the trend favoring reform of the law of kidnapping that existed at the time that our statutes were enacted, and in light of the [stated goal of the Commission to Revise the Criminal Statutes in 1969] of creating a modern, informed and enlightened penal code, it is highly likely that our legislature intended to embrace that reform, thereby reducing the potential for unfairness that had been created under this state's prior kidnapping statutes." (Footnote omitted.) Id., 542–44.

Whether a victim's confinement or movement was merely incidental to and necessary for the commission

of another crime depends on the facts and circumstances of each individual case, and, therefore, the issue is one of fact for the jury, provided that "the evidence reasonably supports a finding that the restraint was *not* merely incidental . . . ." (Emphasis in original.) Id., 547–48. Our Supreme Court identified the following six factors that a jury should be instructed to consider in deciding the factual issue: "[T]he nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense." Id., 548.

The court in *Salamon* was careful to describe its holding as "relatively narrow" and intended to directly affect only those cases in which the state could not "establish that the restraint involved had independent significance as the predicate conduct *for a kidnapping*." (Emphasis added.) Id. Of particular significance with respect to the matter before us, the court in *Salamon* expressly emphasized that "we do not retreat from the general principle that an accused may be charged with and convicted of more than one crime arising out of the same act or acts, *as long as all of the elements of each crime are proven*. Indeed, because the confinement or movement of a victim that occurs simultaneously with or incidental to the commission of another crime ordinarily will constitute a substantial interference with that victim's liberty, *such restraints still may be prosecuted under the unlawful restraint statutes*." (Emphasis added.) Id.

A

We first turn to whether the defendant's conviction of both unlawful restraint and sexual assault in the first degree violates the constitution's prohibition against double jeopardy. The defendant argues that the issue here is akin to the type of double jeopardy violation that arises from conviction of greater and lesser included offenses. We disagree.

We set forth the principles governing our review of double jeopardy claims in part III of this opinion and will not repeat them in detail here. To summarize, as previously stated, double jeopardy analysis in the context of a single trial involves a two step process. The first step requires the defendant to show that the charges arose out of the same act or transaction. The second step requires the defendant to show that the charged crimes are the same offense, which, utilizing the *Blockburger* test, requires an examination of the charged offenses to determine if each requires proof of a fact that the other does not. If they do, then they are not the same offense, and a defendant may be punished for both charges even if they arose out of a singular act.

Looking to the charges at issue in the present case, we assume, without deciding, that, pursuant to the first step of the double jeopardy analysis, the sexual assault and unlawful restraint charges arose out of the same act or transaction.[9] The defendant must also show that the charged crimes constitute the same offense under

_____

[9] The state disputes that the sexual assault and unlawful restraint convictions arose from the same criminal act, arguing that the sexual assault conviction arose from the defendant's act of penetrating A's vagina with his penis, whereas the unlawful restraint conviction was based on the defendant's immediately preceding, albeit legally distinct, act of holding the victim down onto the bed. Nevertheless, the state concedes that it is unnecessary for us to resolve that issue because the defendant cannot prevail under the second step of the double jeopardy analysis.

the *Blockburger* test. Our Supreme Court, in *State* v. *Rothenberg*, 195 Conn. 253, 487 A.2d 545 (1985), rejected a defendant's claim that his prosecution, conviction, and sentencing on both sexual assault in the first degree and unlawful restraint in the first degree unconstitutionally placed him in double jeopardy. See id., 264–65. The court, utilizing the *Blockburger* test, determined that the crimes did not constitute the same offense because each required "proof of a fact not required for conviction of the other. For a conviction of first degree sexual assault, the state must prove compelled sexual intercourse, which is not a necessary element of the crime of first degree unlawful restraint. For a conviction of first degree unlawful restraint, the state must prove exposure of the victim to a substantial risk of physical injury, which is not a necessary element of the crime of first degree sexual assault, since the latter crime can be committed by threatening the safety of a third person." Id., 265. Here, as in *Rothenberg*, the defendant has failed to show that he received multiple punishments for the same offense.

Moreover, to the extent that the defendant argues that the legislature has expressed an intent to preclude multiple punishments for sexual assault and unlawful restraint arising out of a singular criminal act, the defendant has failed to direct our attention to any evidentiary support for such a proposition. Nothing in the text of the statutes supports the defendant's position, nor has the defendant provided any legislative history evincing a clear legislative intent to bar multiple convictions and punishments for sexual assault and unlawful restraint. The defendant would have us glean the necessary legislative intent from our Supreme Court's holding in *Salamon*. We reject that argument, however, because our Supreme Court's decision in *Salamon* was not founded on double jeopardy principles regarding multiple punishments but on principles of statutory construction.

More importantly, the Supreme Court expressly stated that its holding did not apply to or curtail dual convictions of unlawful restraint. Simply put, to the extent that the defendant asserts a double jeopardy violation, we conclude that he has failed to meet his burden under the third prong of *Golding* to demonstrate that a violation exists.

B

Finally, we turn to that aspect of the defendant's claim suggesting that the trial court committed a constitutionally significant instructional error by not giving the jury a *Salamon* type instruction regarding the charge of unlawful restraint and whether that restraint was merely incidental to the sexual assault charges. The defendant has failed again to demonstrate any constitutional violation.

[U]nder . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, [i]t is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, it is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether

those elements were present." (Internal quotation marks omitted.) *State* v. *Aponte*, 63 Conn. App. 82, 85–86, 774 A.2d 1035 (2001), aff'd, 259 Conn. 512, 790 A.2d 457 (2002).

The defendant has failed to demonstrate that the trial court's instruction regarding unlawful restraint could have misled the jury or resulted in an injustice. We agree with the state that, to the extent the defendant has framed his claim as one of instructional error premised on the holding in *Salamon*, it fails because, as we have explained in part III A of this opinion, by its express terms, *Salamon*'s holding and instructional requirements do not apply to unlawful restraint charges. The court in *Salamon* was concerned with making sure that a defendant was charged with the additional serious crime of kidnapping only in those cases in which a jury found additional movement or asportation of a victim that had "independent criminal significance . . . ." *State* v. *Salamon*, supra, 287 Conn. 547. As our Supreme Court explained in *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 136 A.3d 596 (2016), "[t]he court in *Salamon* indicated that unlawful restraint, not kidnapping, would be the proper charge in the absence of such independent significance." Id., 90. This court lacks the authority to alter or reevaluate existing Supreme Court precedent and, accordingly, this is not the appropriate forum for the defendant's arguments to expand the holding of *Salamon* in a manner seemingly inconsistent with that precedent. See, e.g., *State* v. *Joseph*, 174 Conn. App. 260, 282 n.16, 165 A.3d 241 ("As an intermediate appellate body, it is axiomatic that this court is bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court . . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.)), cert. denied, 327 Conn. 912, 170 A.3d 680 (2017).

The defendant cannot establish a constitutional violation arising from the court's jury instruction and, in particular, its failure to give a *Salamon* like instruction in a nonkidnapping prosecution. Accordingly, this aspect of the defendant's claim also fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.